2002 SD 25

**AT & T CORPORATION, Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF REVENUE, Appellee.**

No. 21906.

Supreme Court of South Dakota.

Considered on Briefs Oct. 1, 2001.

Decided Feb. 20, 2002.

Patrick G. Goetzinger, Jennifer K. Trucano of Gunderson, Palmer, Goodsell and Nelson, Rapid City, South Dakota, for appellant.

Harvey M. Crow, Jr., Department of Revenue, Rapid City, South Dakota, for appellee.

KONENKAMP, Justice.

[¶ 1.] In this appeal challenging excise and sales tax assessments, we first address the question whether gross receipts from the sale and installation of telephone switching devices are subject to contractor's excise tax. We hold that even if the devices are not fixtures because they create no improvement to realty, their sale and installation are nonetheless subject to excise tax under the expanded reach of our revised tax laws. Second, in its sales and use tax audit, the Department of Revenue refused to accept certain tax records offered in electronic form. When the in-formation was finally submitted on paper documents, it was refused as untimely. Because our statutes do not prohibit submissions in electronic form, we conclude that providing electronically stored data can be sufficient to comply with tax audit requirements. We affirm in part, reverse in part, and remand for a recalculation of the tax assessment.

## A.

### Background

[¶ 2.] Through its subsidiaries, AT & T Corporation holds both sales tax and contractor's excise tax licenses in South Dakota. AT & T manufactures, sells, installs, and services a telecommunications switching device called "5ESS." The South Dakota Department of Revenue conducted a tax audit of AT & T's transactions for the period of January 1, 1993 through January 1, 1997. The audit began in 1996, and, after several extensions granted at AT & T's request, ended in August 1997.

[¶ 3.] AT & T claimed that a substantial number of its transactions were non-taxable resales and exempt government sales. To support these exemptions, AT & T offered some documentation in hard copy and other data in electronic form. Not all the information the auditor requested was timely furnished, at least not in a form required by the auditor. AT & T submitted no further information until August 1999, when the auditor was deposed. One supporting record was not submitted until the administrative hearing. For the auditor to have recommended certain tax exemptions, all needed information had to be in hand by the end of the audit. Lacking this information or, at least, lacking it in the form of hard copy, the auditor denied the full range of exemptions AT & T claimed.

[¶ 4.] On January 22, 1999, the Department issued a certificate of assessment for sales and use tax and interest of $383,384.39 and contractors' excise tax and interest of $323,265.35. AT & T appealed, contesting the entire excise tax assessment and $314,266.08 of the sales and use tax assessment. Following a hearing before an administrative law judge (ALJ), the assessments were upheld.

[¶ 5.] AT & T appealed to the circuit court. In a bench ruling, the court concluded that the 5ESS devices were not fixtures and reversed the assessment for excise tax, but affirmed the remainder of the assessments. The court then directed the parties to submit proposed findings of fact and conclusions of law. After reviewing these submissions, the court rescinded its earlier ruling. It decided that even if these devices were not fixtures, the Legislature had amended the rules on excise taxation to include the gross receipts of contractors who performed work in certain industries. The court thus affirmed the entire assessment. AT & T appeals.[1]

## B.

### Contractor's Excise Tax under SDCL 10–46A

[¶ 6.] AT & T contends that the sale and installation of its 5ESS equipment is not subject to excise tax because these devices create no improvement to realty. Relying on cases such as *Brink Electric Construction Company v. State Department of Revenue,* AT & T points out that although this equipment must be installed by its own technicians in climate-controlled communication rooms on racks bolted down for support, the devices are readily removable and easily transferred to other locations. 472 N.W.2d 493, 498 (S.D.1991). In AT & T's view, because these devices cannot be designated as fixtures, their installation cannot constitute the improvement of realty, and thus no excise tax can be assessed.

[¶ 7.] Two years after *Brink,* the excise tax statutes were amended.[2] Our Legislature evidently wanted to simplify classification for excise tax purposes. If we read SDCL 10–46A–1 by itself, it might still appear that excise tax is imposed only on "prime contractors engaged in realty improvement contracts[.]" However, SDCL 10–46A–2, as amended in 1993, provides: "Prime contractors and subcontractors subject to the tax imposed by § 10–46A–1 include without limitation those enumerated in the Standard Industrial Classification Manual of 1987 [SIC Manual] ... construction (division c)." Reinforcing the extended reach of the tax, SDCL 10–46A–2.2 defines a prime contractor as "a person entering into a realty improvement contract or a contract for construction services as enumerated in division c of the Standard Industrial Classification Manual, 1987. . . ."

[¶ 8.] Whenever practicable, we adhere to the ordinary meaning of statutory language. SDCL 2–14–1. Our duty is to construe laws on the same subject compatibly, rendering them harmonious and workable where possible. *Faircloth v. Raven Industries, Inc.,* 2000 SD 158, ¶ 8, 620 N.W.2d 198, 201. Taken together, SDCL 10–46A–1, SDCL 10–46A–2, and

---

1. Our standard of review in administrative appeals is governed by SDCL 1–26–37. *See Sopko v. C & R Transfer Co., Inc.,* 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228. Tax statutes are construed liberally in favor of the taxpayer, as are ambiguities in those statutes. *Nash Finch Co. v. South Dakota Dept. of Rev.,* 312 N.W.2d 470 (S.D.1981).

2. SL 1993, ch. 101: "An Act to revise which construction services are subject to contractor's excise tax."

10–46A–2.2 embrace the activities to be taxed. Thus, the Legislature intended excise taxes to apply not just to "prime contractors engaged in realty improvement contracts," but also to those who "contract for construction services as enumerated in division c of the Standard Industrial Classification Manual." SDCL 10–46A–1 and 10–46A–2.2. This interpretation is supported by the following passage from 10–46A–2.2: "If a contractor engages in services not specifically listed in division c of the [SIC] Manual, 1987, then the services must entail the construction, building, installation, or repair of a fixture to realty before the gross receipts are subject to the tax imposed by § 10–46A–1." With this provision, it is clear that the tax applies to certain industry contracts as well as to contracts for realty improvements.

[¶ 9.] To summarize, SDCL 10–46A–2 declares that excise tax shall be levied on all contractors, prime and sub-, enumerated in division c (construction) of the SIC Manual. The tax also applies under SDCL 10–46A–2.2 to any contractor not enumerated in division c, whose services entail the construction, building, installation, or repair of a fixture to realty. Therefore, to decide whether excise tax applies, we ask two questions: first, does the contractor's enterprise fall under division c of the SIC? If so, it is subject to the tax. If not, we ask, second, is the contractor engaged in construction, building, installation, or repair of a fixture to realty? If so, it is, again, subject to the tax. If not, then no excise tax applies.

[¶ 10.] It remains, then, to decide first whether AT & T's activity here falls under division c of the SIC Manual. If it does, there is no need to decide whether the work also constitutes an improvement to realty. AT & T had been filing excise tax returns and paying contractor's excise tax on its labor charges for installation. Nonetheless, the Department assessed excise tax on the gross receipts of the entire transaction, equipment and labor, classifying both sales and installation under the SIC Manual, division c, § 1731—"Electrical Work," which includes "telecommunications equipment installation—contractors" and "telephone and telephone equipment installation—contractors."[3] The ALJ deemed this classification a "critical fact." On this point, the circuit court likewise reasoned that because AT & T is a prime contractor selling and installing telecommunications equipment, it renders a construction service listed in division c.

[¶ 11.] The SIC Manual classifies business entities by the type of economic activity they perform. SIC Manual at 11. These classifications are based on the "primary" or "predominant" activity of the subject industries. *Id.* at 15. The activity in which a particular service industry is primarily engaged is determined by the value of the receipts or revenues generated by the various activities of the business. *Id.* at 16. The activity generating the greatest relative share of "value added" is the business's primary activity. *Id.* at 15.

[¶ 12.] As the introductory material of the SIC Manual explains, division c "includes establishments primarily engaged in construction," and

[e]stablishments primarily engaged in the distribution and construction or installation of equipment often present classification problems. Since value added is not available for distinguishing *the relative importance of sales versus installation or construction* activities,

---

**3.** Excise tax is computed on the total contract price. SDCL 10–46A–3. Besides added excise tax, the assessment on the 5ESS con-tracts included additional use tax for the fair market value of materials, engineering fees, and transportation fees.

payroll or employment may be used as measures yielding approximately the same results.

On this basis, separate establishments primarily engaged in the sale and installation of the following *illustrative* types of structures or integral parts of structures, *generally site-assembled*, are classified in construction rather than in trade: a. Steel work on bridges or buildings; b. Elevators and escalators; c. Sprinkler systems; d. Central air-conditioning and heating equipment; e. Communications equipment; and f. Insulation materials.

On the other hand, establishments *primarily* engaged in the sale and installation of the following *illustrative* types of *preassembled* equipment are classified in trade rather than in construction: a. Major household appliances, such as refrigerators, dishwashers, clothes washers and dryers, stoves and ranges; and b. Partitions for banks, stores, and restaurants.

SIC Manual at 54 (emphasis added).

[¶ 13.] Are 5ESS devices more like structures or integral parts of structures, generally site-assembled, or are they more like preassembled appliances? If the former, then AT & T's activities are primarily construction or installation; if the latter, then its activities are primarily trade or sales. 5ESS equipment is manufactured off-site and transported to the customer's location for installation. These units must be installed to exacting standards by AT & T technicians. They are bolted down on concrete floors to provide stability and to comply with OSHA requirements. These devices are continuously updated so that the telecommunications provider can remain competitive. Components in the 5ESS include "circuit packs," devices similar to memory or processor cards. When more or less switching capacity is needed, these circuit packs can be added or removed and installed elsewhere. Only AT & T technicians perform these services.

[¶ 14.] Helpful, but not dispositive, to our analysis is the SIC Manual's illustration that the sale and installation of "communications equipment" falls under the construction category. But AT & T contends that the proper SIC classification here is under division d, "Manufacturing." SIC Manual, division d, at 67. In this category are manufacturers of "electric computer systems." *See* § 3571, SIC Manual. The 5ESS devices perform computer functions, AT & T argues, and thus they fall under the manufacturing classification.

[¶ 15.] As the SIC Manual attests, classifying this activity is difficult and the more so here considering the nature of AT & T's contract with its customers. Through its general procurement agreement, AT & T furnishes not only manufactured, delivered, and installed equipment, but a host of attendant services as well. These services include configuring, engineering, maintaining, upgrading, warranting, and removing the equipment. And if the customer sells this equipment to another telephone provider, the contract provides for the dismantling and transportation of it to the new location. All these services are provided by AT & T as part of its contract.

[¶ 16.] Like the ALJ and the circuit court, we are left with little more than the bare SIC classification as basis for decision. In deciding this classification, we cannot use the underlying methodology of the SIC Manual because we have no monetary breakdown to determine the predominate revenue-generating activity here. We cannot distinguish the relative importance of manufacture and sales versus installation and related contractual services, all encompassed in a single contractual

arrangement. Nor can we apply payroll or employment figures as a gauge to achieve an equivalent measure. Such information is not in the record.

[¶ 17.] In the end, which classification this activity falls under is a finding of fact, and the ALJ, as the fact finder, found that AT & T's activities in selling and installing 5ESS equipment were more properly classified as construction than as manufacturing. We cannot overturn fact findings unless they are clearly erroneous in view of the entire evidence in the record. SDCL 1–26–36. Although we acknowledge the difficulty in classification, no argument can be mounted on the record that the ALJ's findings are clearly erroneous. Since AT & T's activities fall under division c of the SIC Manual, gross receipts from the sale and installation of 5ESS devices are subject to contractor's excise tax.

### C.

### Timely Offer of Sales Tax Documents for Audit

[¶ 18.] South Dakota law obliges taxpayers to cooperate with the Department of Revenue in an audit. In particular, SDCL 10–59–3 requires that records, books, and documents must be prepared for presentation to the auditor. Taxpayers must present all their "documents evidencing reduction, deduction, or exemption of tax[.]" *Id.* However, this language does not require documents to be in any specific form. *Id.; see also In re Sales and Use Tax Liability of Pam Oil,*

*Inc.,* 459 N.W.2d 251 *passim* (SD 1990). On the other hand, records not presented within the time frames of SDCL 10–59–3 and 10–59–7 need not be considered either by the auditor or by the Secretary of Revenue.[4] *Pam Oil,* 459 N.W.2d at 257.

[¶ 19.] According to the record, AT & T did timely offer to submit at least some of the required information in electronic rather than paper form. Certain customer transactions were archived in electronic form only. The Department's auditor conceded that the untimely submitted paper documents, some of which were offered during the audit in electronic form, were relevant and reliable and would have been accepted to reduce the assessment if they had been presented in paper form before the audit ended.

[¶ 20.] Nothing in our law prohibits submitting computer-stored information as documentary evidence. In principle, auditors should accept electronic submissions, if data accuracy can be validated and the information is retrievable when the auditor needs it. We think it unreasonable, in this electronic, computer-driven age, to require a telecommunications company, such as AT & T, to produce paper copies of all data that the company ordinarily archives only in electronic form. We remand to the Department to examine AT & T's electronic submissions that were timely offered and to adjust, as appropriate, AT & T's tax assessment with respect to the transactions in question.[5]

---

4. AT & T contests the sales and use tax assessment in three categories of transactions: sales to AT & T Credit Corporation; sales to Ellsworth Air Force Base and other federal government agencies; and sales to Anixter, a reseller.

5. As to timely submission, we distinguish two circumstances: (1) data submitted (or offered) timely in electronic form and then re-submitted, late, in paper form; (2) data newly submitted, late, in paper form, i.e., not preceded by timely offer of the same data in electronic form. The first type should have been accepted by the Department, but the Department need not have accepted the second. AT & T's argument that failure to accept the second type was a violation of due process is without merit.

[¶ 21.] Affirmed in part, reversed in part, and remanded.

[¶ 22.] GILBERTSON, Chief Justice, and SABERS, and AMUNDSON, Justices, and GORS, Acting Justice, concur.