#23744-a-JKK

**2006 SD 18**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DOCTOR'S ASSOCIATES, INC.,       Plaintiff and Appellant,

    v.

DEPARTMENT OF REVENUE
AND REGULATION,              Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE MAX A. GORS
Judge

* * * *

TODD C. MILLER              Attorney for plaintiff
Sioux Falls, South Dakota     and appellant.

HARVEY M. CROW, JR.
South Dakota Department of
 Revenue and Regulation      Attorney for defendant
Rapid City, South Dakota     and appellee.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 9, 2006

OPINION FILED **03/01/06**

#23744

KONENKAMP, Justice

[¶1.] Doctor's Associates, Inc., headquartered in Milford, Connecticut, owns the international Subway fast-food restaurant franchise. South Dakota has fifty-three restaurants in the Subway chain. Subway collects an 8% "royalty" fee from each franchisee's weekly gross sales. After an audit, the Department of Revenue and Regulation determined that Subway's royalty fees constitute taxable gross receipts. Since Subway failed to report these fees on its sales tax returns, the Department issued a certificate of assessment for sales tax and interest. Subway contested the assessment. Following an unsuccessful administrative appeal, Subway now seeks review before us, claiming that its royalty fees are non-taxable intangibles and that the Department failed in its burden of proving taxability. Because Subway's franchise agreement provides that its royalty fees are collected in exchange for tangible personal property and services, these fees constitute taxable gross receipts under South Dakota law. Therefore, we uphold the assessment.

## Background

[¶2.] On August 17, 2000, the senior auditor for the Department sent Subway a notice of intent to audit. As part of the notice, the Department requested that Subway submit certain corporate records. The Department further informed Subway in the notice of intent to audit that "(1) the audit period was July, 1997 through October, 2000; (2) the audit would commence on December 5, 2000; and (3) Subway had sixty days from December 5, 2000 to present to the auditor 'all documents evidencing reduction, deduction or exemption from tax,' and any such records not presented would not have to be considered by the auditor."

-1-

[¶3.]     To operate as a franchisee, each Subway restaurant owner was required to sign and accept, as is, Subway's franchise agreement, pay a one-time, non-refundable franchise fee, and thereafter, pay an 8% "royalty" fee on the restaurant's gross weekly sales.  When Subway received the notice of intent to audit, it provided the Department with financial information about the South Dakota franchisees.  Subway submitted "(1) a sales quarterly ledger detailing the royalty fees paid to Subway each week; (2) a copy of the April, 1997, 'Limited Amnesty Program for the Franchise Industry,' outlining the Department's policy regarding taxation of royalty fees beginning July 1, 1997; and, (3) a copy of the Franchise Agreement."

[¶4.]     The audit took place in Milford and began on December 5, 2000.  It lasted approximately six months.  During the audit, the Department reviewed Subway's records and concluded that the 8% royalty fee received by Subway from its franchisees constituted gross receipts and should have been reported in Subway's sales tax returns.  In reaching its conclusion, the Department relied on the language of the franchise agreement.  Paragraph three states that Subway provides tangible personal property to franchisees.[1]  Paragraph four indicates that services

---

1.     The language of paragraph three provides:

The Company hereby grants to the Franchisee:

     a.  access to the Company's recipes, formulas, food preparation procedures, business methods, business forms, business policies and body of knowledge pertaining to the operation of a sandwich shop, including the loan of a copy of the Company's Operations Manual;

     b.  access to information pertaining to new developments and techniques in the Company's sandwich business; and

(continued . . .)

#23744

are provided to franchisees.[2]  Because the franchise agreement stipulates that the royalty fees are consideration for allowing the franchisees access to Subway's body of knowledge, among other things, the Department deemed the royalty fees collected by Subway to be taxable gross receipts under SDCL 10-45-2 and 10-45-4.[3]

[¶5.]          Subway had the opportunity to submit any evidence to show that the royalty fees should not be subject to sales tax.  Beginning on December 5, 2000, Subway had sixty days to present materials to the Department that would reduce,

_____

(. . . continued)

        c.  a limited license to use the Company's rights in and to its service marks and trademarks in connection with the operation of one sandwich shop to be located at a site approved by the Company and the Franchisee.

2.     Paragraph four provides:

The Company agrees to:

        a.  provide a training program for the operation of sandwich shops using the Company's recipes, formulas, food preparation procedures, business methods, business forms and business policies. The Franchisee shall pay all transportation, lodging and other expenses incurred in attending the training program.

        b.  provide a Company Representative that the Franchisee may call upon during normal business hours for consultation concerning the operation of his business; and

        c.  provide the Franchisee with a program of assistance which shall include periodic consultations with a Company Representative, publish a periodical advising of new developments and techniques in the Company's sandwich business, and grant access during normal business hours to specified office personnel for consultations concerning the operation of his business.

3.     Under the *Recitals* section of the franchise agreement, it is provided:

The Franchise Fee, *Royalty* and promises by the Franchisee contained herein constitute the sole consideration to the Company for the use by the Franchisee of its body of knowledge, systems and trademark rights. (Emphasis added).

deduct, or exempt the royalty fees from tax. When the sixty days ended on February 5, 2001, Subway had not submitted any evidence. Subway then requested an extension in order to present additional evidence. The extension was granted. On February 23, 2001, the Department sent Subway a "listing showing the [r]oyalty fees subject to sales tax to Subway for review." When the extension expired on March 5, 2001, Subway still had not presented any evidence. Then, in May 2001, Subway requested another extension, this time "to review the South Dakota Code and Regulations." Because the extension was not requested for the purpose of presenting additional evidence, the Department denied Subway's request.

[¶6.] In the end, the auditor received no evidence from Subway to reduce, deduct, or exempt any portion of the royalty fees from sales taxation. Consequently, the Department issued Subway a certificate of assessment for $270,660.70 on June 21, 2001. Subway requested a hearing and argued that the royalty fees should not be taxed because they were not received as consideration for taxable services or property contained within the franchise agreement. At the hearing in June 2004, Subway attempted to offer new evidence that should have been submitted before the sixty days expired under SDCL 10-59-7 or during the thirty-day extension. The hearing examiner excluded the evidence and affirmed the Department's certificate of assessment.

[¶7.] Subway appealed the decision to the circuit court. That court also excluded Subway's evidence for not having been timely presented within the statutory time and affirmed the certificate of assessment. Subway now appeals to this Court, claiming that the circuit court erred when it affirmed the hearing

examiner's decision that (1) the royalty fees paid by the fifty-three South Dakota franchisees to Subway were taxable; (2) Subway failed to overcome the presumption of correctness of the certificate of assessment; and (3) certain testimony and documentary evidence were inadmissible.

### Analysis and Decision

[¶8.]        Our review of an administrative appeal is governed by SDCL 1-26-36. Watertown Coop. Elevator Ass'n v. S.D. Dept. of Rev., 2001 SD 56, ¶10, 627 NW2d 167, 171.  "We give deference to the agency on factual matters, applying the clearly erroneous standard of review."  *Id.* (citing Sopko v. C & R Transfer Co., Inc., 1998 SD 8, ¶6, 575 NW2d 225, 228 (citations omitted)).  However, the agency's conclusions of law are reviewed de novo.  W. Wireless Corp. v. Dept. of Rev., 2003 SD 68, ¶5, 665 NW2d 73, 75  (citing *Sopko,* 1998 SD 8, ¶6, 575 NW2d at 228).

[¶9.]        Subway first contends that the circuit court erred when it concluded that the royalty fees, which Subway claims are intangibles, could be subject to sales tax under SDCL 10-45-2 and 10-45-4.  The Department, on the other hand, asserts that the terms of the franchise agreement illustrate that Subway provided tangible personal property and services to South Dakota franchisees in return for the royalty fees.  Thus, the Department deems the royalty fees in this case to be taxable under SDCL 10-45-2 and 10-45-4.

[¶10.]        We begin by first examining the statutes in question.  Whether SDCL 10-45-2 and 10-45-4 impose a sales tax under these circumstances is a question of law, reviewed de novo.  *See* S.D. Dept. of Rev. v. Sanborn Tel. Coop*., 455 NW2d 223, 225 (SD 1990) (citations omitted).  Under SDCL 10-45-2, "the gross receipts of all

sales of tangible personal property consisting of goods, wares, or merchandise" are subject to sales tax, and, under SDCL 10-45-4, a tax is imposed on "the gross receipts of any person from the engaging in or continuing in the practice of any business in which a service is rendered."

[¶11.] In examining SDCL 10-45-2 and 10-45-4 together, we see that the royalty fees will be subject to sales tax if they constitute *gross receipts* for the sale of *tangible personal property* or *service*. "Gross receipts" is defined in SDCL 10-45-1(6) as the "consideration, including cash, credit, property, and services, for which tangible personal property or services are sold, leased, or rented, valued in money, whether received in money or otherwise. . . ." And "tangible personal property" is defined as "personal property that can be seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses." SDCL 10-45-1(14). Finally, the definition of "service" is contained in SDCL 10-45-4.1, which includes "all activities engaged in for other persons for a fee, retainer, commission, or other monetary charge, which activities involve predominantly the performance of a service as distinguished from selling property."

[¶12.] By applying these statutory definitions to the facts of this case, the royalty fees received by Subway were properly considered gross receipts from the sale of tangible personal property and services. This determination is based on the records Subway provided the Department for the audit, specifically the franchise agreement. First, in the section entitled *Agreement*, paragraph three states that Subway "grants" the franchisee access to, among other things, "the Company's recipes, formulas, food preparation procedures, business methods, business forms,

business policies and body of knowledge. . . ." From this language it is clear that Subway is providing its franchisees with "tangible personal property" as defined in SDCL 10-45-1(14). Then in paragraph four, Subway agrees to "provide" franchisees a "Company Representative that the Franchisee may call upon during normal business hours for consultation concerning the operation of his business[.]" Based on the language of paragraph four, Subway is providing its franchisees with "services" as defined in SDCL 10-45-4.1. Finally, in the *Recitals* section of the agreement, we see that Subway receives consideration, i.e. "royalty," constituting "gross receipts" under SDCL 10-45-1(6), for the tangible personal property it grants under paragraph three and the services it provides under paragraph four.

[¶13.] Accordingly, Subway provides tangible personal property and services in return for the royalty fee, and SDCL 10-45-2 and 10-45-4 apply to impose sales tax on these receipts. This finding, however, does not automatically obligate Subway to pay sales tax on the *entire* royalty fee collected from the fifty-three Subway franchisees across South Dakota. Subway was afforded an opportunity to present evidence to reduce, deduct, or exempt the royalty fees, or a portion thereof, from taxation, within sixty days of the commencement of the audit. *See* SDCL 10-59-3; SDCL 10-59-7; AT&T Corp. v. S.D. Dept. of Rev., 2002 SD 25, ¶18, 640 NW2d 752, 757 (citing *In re* Pam Oil, Inc., 459 NW2d 251, 257 (SD 1990)). This Subway failed to do until more than two years later. Thus, the circuit court did not err when it concluded that the entire royalty fee was subject to sales tax under SDCL 10-45-2 and 10-45-4. *See AT&T Corp.*, 2002 SD 25, ¶18, 640 NW2d at 757; *Pam Oil, Inc.*, 459 NW2d at 257.

[¶14.] Subway's next contention is similar to its first claim, that royalty fees, as a whole, are not taxable. Subway asserts that the certificate of assessment is *per se* incorrect because the Department "did not seek a reasonable value of services and tangible personal property that the Department deemed taxable." For that reason, Subway insists that the circuit court erred when it held that Subway failed to overcome the presumption of correctness of the certificate of assessment. It is well settled that certificates of assessment are presumed correct and thus the burden was on Subway to overcome that presumption. *See* SDCL 10-59-8. Subway must present evidence that there was a mistake of fact or error of law in the conduct of the audit which resulted in the assessment. *See* SDCL 10-59-9.

[¶15.] Subway does not suggest that the certificate contains a mistake, or that the Department's calculations or figures in the certificate of assessment were inaccurate. Rather, Subway argues that SDCL 10-46-18.2 imposes a burden on the Department to determine the "reasonable value" of the services and tangible personal property Subway sold in return for the royalty fees. Specifically, Subway alleges that SDCL 10-46-18.2 requires the Department to categorize the items listed in paragraphs three and four as either tangible personal property or services. Subway further claims that the Department was required to "verify whether Subway actually performed any services for the [fifty-three] franchisees in the State of South Dakota" in order to determine what, if any, tax should be assessed.

[¶16.] The problem with this argument is that SDCL 10-46-18.2 is a use tax statute. Here Subway was assessed a sales tax under SDCL 10-45-2 and 10-45-4. The Department reviewed Subway's financial records and franchise agreement and

determined the amount of tax applicable to the 8% royalty fees Subway received. Subway has not contested these calculations under the sales tax statutes. Nor has Subway presented competent evidence that the certificate of assessment contained a mistake of fact or error of law. As such, the circuit court did not err when it held that Subway failed to overcome the presumption of correctness for the certificate of assessment.

[¶17.] Subway's final argument on appeal is that the circuit court erred when it disallowed testimonial and documentary evidence that would have established the value of services and personal property subject to taxation. The evidence Subway offered, Exhibit D, is a statistical summary prepared by Subway in 2003, containing values for 2002, 2001, 2000, 1999, and 1998. Subway also attempted to offer the testimony of Mike Dolishny, who was not employed by Subway during the time of the audit, but would have testified concerning Exhibit D. The circuit court affirmed the hearing examiner's decision to exclude Exhibit D and Dolishny's testimony because Subway failed to present the evidence during the audit. *See* SDCL 10-59-7.

[¶18.] Nonetheless, Subway insists that SDCL 10-59-7 is inapplicable under the circumstances. Subway argues that Exhibit D was not required to be kept by law and therefore should have been allowed at any time and that Dolishny should have been permitted to testify about Exhibit D. Subway also claims that Exhibit D and Dolishny's testimony were not offered to prove a "reduction, deduction or exemption" from tax. Instead, Subway offered Exhibit D to show how royalty fees were intangibles and should not be taxed in the first place. Subway also claims that

the Department arbitrarily denied its request for an extension of time, and as a result, the evidence should be allowed.

[¶19.] We start with Subway's assertion that the Department arbitrarily denied its second request for an extension of time to submit further evidence. This argument is not supported by the evidence. A review of the record shows that Subway sent a letter to the Department requesting a second extension of time for the purpose of reviewing the "South Dakota Code and Regulations." Because the extension was not for the purpose of submitting additional evidence, the Department denied Subway's request. We fail to see how this decision was arbitrary, especially when the Department had earlier granted an extension.

[¶20.] We next address Subway's argument that SDCL 10-59-7 does not apply because Exhibit D, a statistical summary, was not a document required to be kept by law and was not offered as evidence of a reduction, deduction or exemption from tax under SDCL 10-59-7.[4] Subway was fully aware that the Department considered the fees taxable based on the language of the franchise agreement. Yet, Subway failed to present Exhibit D to the Department during the audit, or during the extension granted by the Department. Although Subway indicates that Exhibit D existed at the time of the audit, Subway did not present this material until more

---

4. SDCL 10-59-7 provides, in relevant part:

Any documents or record *required to be kept by law* to evidence reduction, deduction, or exemption from tax not prepared for presentation to the auditor within sixty days from the commencement date of the audit do not have to be considered by the auditor or secretary.

(Emphasis added).

than two years later. Nevertheless, Subway claims Exhibit D was not required to be kept by law, and thus it should now be allowed.

[¶21.] Under SDCL 10-45-45, Subway is required to "keep records and books of all receipts and sales, together with invoices, bills of lading, copies of bills of sale, and *other pertinent papers and documents.*" (Emphasis added). Here Subway is offering Exhibit D as evidence that the royalty fees should not be subject to tax under SDCL 10-45-2 and 10-45-4. Exhibit D is therefore a *pertinent document.* Because Exhibit D is a pertinent document it was contemplated under the statutory time frame set out in SDCL 10-59-3 and 10-59-7. Also, because the purpose of Exhibit D was an attempt to remove the royalty fees from tax under SDCL 10-45-2 and 10-45-4, it is certainly evidence purporting to reduce, deduct or exempt the royalty fees from tax. Exhibit D should have been presented to the Department as required under SDCL 10-59-3 and 10-59-7.

[¶22.] Because Subway failed to submit the evidence during the sixty days required under SDCL 10-59-3 and 10-59-7, plus the thirty-day extension, Subway had no right to later offer this material. *See AT&T Corp.,* 2002 SD 25, ¶18, 640 NW2d at 757; *Pam Oil, Inc.,* 459 NW2d at 257. To allow late submittal of these materials long after the audit has ended would make the audit process interminable and unworkable. As a result, the circuit court did not err when it affirmed the hearing examiner's decision to exclude Exhibit D and Dolishny's testimony pertaining to Exhibit D.[5]

---

5. Some of the services Subway provides to its franchisees in exchange for the royalty fees may not be subject to sales tax. For example, the training for

(continued . . .)

#23744

[¶23.]	Affirmed.

[¶24.]	GILBERTSON, Chief Justice, and SABERS, ZINTER, and

MEIERHENRY, Justices, concur.

---

(. . . continued)

      franchisee employees takes place in Connecticut.  However, Subway failed to timely submit proof of valid deductions and therefore they could not be considered in this audit.